UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

JOHNATHAN HATCH, on behalf of
himself and others similarly situated,

     *Plaintiff,*

 v.

LEXISNEXIS RISK SOLUTIONS, INC., a
Georgia Corporation, and
POLICEREPORTS US, LLC, a North
Carolina Limited Liability Company,

     *Defendants.*

Action No. 3:19-cv-449

## COMPLAINT
### (Jury Trial Demanded)

## SUMMARY OF THE ACTION

The Defendants violated the federal Driver's Privacy Protection Act of 1994 which Congress enacted to protect people and their personal information.

State DMVs require people who apply for drivers' licenses and vehicle registrations to disclose personal information, including their name and residential address. *See Maracich v. Spears*, 133 S. Ct. 2191, 2206 (2013). For many years, this personal information was widely available from the DMVs with little restriction. *See id.* at 2198. The unrestricted disclosure of state DMV information led to problems; for example (1) stalkers and criminals could get the information; and, (2) states commonly sold the personal information to marketers. *Id.* Congress addressed these two concerns by

enacting the Driver's Privacy Protection Act of 1994 (DPPA), 18 U.S.C. § 2721 *et seq.*, which bans unwanted disclosure and use of personal information, including names and residential addresses.

Defendants in this case are data aggregation and distribution firms that have systematically violated the DPPA by knowingly obtaining protected personal information from the motor vehicle records of thousands of motorists involved in automobile accidents. Defendants have then sold that information to law firms and other entities whom the Defendants knew would use that protected information for marketing purposes. This systematic abuse has continued even after the United States Supreme Court held, in 2013, that attorney solicitation is an improper use of DMV information. *See Maracich, supra,* at 2209.

Plaintiff in this case is an individual whose protected personal information was improperly obtained, used, and/or disclosed by Defendants in violation of the DPPA when Defendants (a) obtained protected DMV information copied from his driver's license data onto an accident report and (b) sold Plaintiff's protected information to lawyers who used that information to send marketing letters to Plaintiff. Plaintiff files this case for himself, and for others whose privacy was violated, to do two things: (1) ask the Court for an injunction and declaratory relief to stop Defendants from further abuse of personal DMV information; and, (2) to ask the Court to award liquidated damages as provided by Congress.

## PARTIES

1.     Plaintiff Johnathan Hatch is a citizen and resident of Mecklenburg County, North Carolina.

2.     Deloris Gaston and Leonard Gaston originally filed a putative class action on January 12, 2016, entitled *Delores Gaston, et al. v. LexisNexis Risk Solutions, Inc.,* Case No. 5:16-cv-9, in the United States District Court for the Western District of North Carolina, asserting a superset of the claims asserted herein. That filing tolled the statute of limitations as to all members of the putative Class in this case, including Hatch.

3.     Defendant LexisNexis, upon information and belief, is a Georgia Corporation doing business in this judicial district of the State of North Carolina, and is a leading global provider of content-enabled workflow solutions designed specifically for professionals in the legal, risk management, corporate, government, law enforcement, accounting, and academic markets.

4.     Defendant PoliceReports.US, LLC ("PRUS"), upon information and belief, is a North Carolina limited liability company with an office located at 219 Williamson Road, Suite 2201, Mooresville, North Carolina, and is doing business in this judicial district of the State of North Carolina. Defendant PRUS was acquired by LexisNexis on August 4, 2014. Defendant PRUS, upon information and belief, is an online distributor of vehicle accident/crash reports currently doing business in at least 30 states in the United States.

3

5.      This action arises under, and is brought pursuant to, the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-25. Subject matter jurisdiction is conferred upon this Court by 18 U.S.C. § 2724(a) and 28 U.S.C. § 1331, as the actions arise under the laws of the United States.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as one or more Defendants do business in the District and therefore are deemed residents of this district for purposes of venue. 28 U.S.C. § 1391(b) and (c).

## FACTS

### Drivers' Licenses, Registrations and Departments of Motor Vehicles

7.      The North Carolina Division of Motor Vehicles ("NCDMV") is a "State department of motor vehicles" as that term is used the DPPA.

8.      As used herein, the term "driver's license" refers to a permit to operate a motor vehicle issued by a State department of motor vehicles.

9.      Hatch's driver's license, like the licenses of the putative Class Members, was issued by NCDMV.

10.     Driver's licenses, databases of drivers' license information maintained by state motor vehicle departments, databases of vehicle registration data maintained by state motor vehicle departments, and vehicle registration cards and records are motor vehicle records as defined by 18 U.S.C. § 2725(1).

4

11.     Names, addresses, and driver's license numbers on driver's licenses constitute personal information that is protected by the DPPA.

12.     Names, addresses, and driver's license numbers in DMV license databases constitute personal information that is protected by the DPPA.

### The DMV-349 Accident Report

13.     Law enforcement agencies in North Carolina are obligated to investigate motor vehicle accidents which are reported to them, such as those described below.

14.     Any driver who is involved in a motor vehicle accident in North Carolina is required by law to produce her driver's license on request of a law enforcement officer ("officer"). N.C. Gen. Stat. § 20-29.

15.     Any person who operates a motor vehicle in North Carolina is required to produce the registration card for that vehicle upon request of a law enforcement officer. N.C. Gen. Stat. § 20-57(c).

16.     In conducting such accident investigations, law enforcement officers in North Carolina must use a standard form promulgated by the North Carolina Division of Motor Vehicles ("NCDMV"), known as a DMV-349, to record their investigations of reportable crashes, as defined by N.C. Gen. Stat. § 20-4.01(33b).

17.     When law enforcement officers complete the DMV-349 in connection with an accident investigation, they are obligated to comply with

5

the then-current edition of the Instruction Manual for the DMV-349 ("the Manual").

18.     At the time of the collision described below, and at all times relevant to this action, the Manual instructed officers:

      a.    to record the names of drivers involved in an accident as follows: "Enter the driver's name exactly as it appears on his/her driver's license";

      b.    to compare the address given by a driver to the address on that driver's license and indicate on the DMV-349 whether those addresses match; and

      c.    to record each involved driver's license number on the DMV-349.

19.     At the time of the collision described below, and at all times relevant to this action, the Manual instructed officers to review the registration information for each vehicle involved in the wreck and to record the name and address of the registered owner of each involved vehicle on the DMV-349.

20.     When Defendants acted as described below, the Manual was publicly available to each Defendant.

6

## Facts related to Defendants' business

21.    At all relevant times, Defendants have operated, and continue to operate, a website for the purpose of selling accident reports, including North Carolina DMV-349s.

22.    Defendants contracted with CMPD to make all CMPD reports available on Defendants' website.

23.    Neither CMPD nor Defendants redacted any information from DMV-349 forms prior to making those reports available on Defendants' website.

24.    CMPD placed no restrictions, other than the maximum price Defendants could charge, on Defendants' sale of DMV-349s generated by CMPD.

25.    From at least 12 January 2012 until sometime in 2016, Defendants offered a monthly subscription to said website, allowing subscribers to download as many accident reports has the subscriber desired to download for a flat monthly fee (hereinafter referred to as a "bulk sale").

26.    From at least 12 January 2012 through the present, Defendants have offered accident reports, including North Carolina DMV-349s for sale by charging a fee for each report downloaded.

7

27. Each DMV-349 on which the Same-as-D.L. Box was checked contained personal information from a motor vehicle record, namely the address of the driver(s) for whom the Same-as-D.L. Box was checked.

28. Each DMV-349 which contained a driver's license number contained personal information from a motor vehicle record, namely the driver's license number.

29. Defendants knew that numerous purchasers of CMPD DMV-349s were law firms who used those DMV-349s to send letters marketing legal services to persons involved in motor vehicle accidents.

30. Defendant LexisNexis operates other websites which provide personal information, including names, addresses and driver's license numbers, such as Accurint.com.

31. On those sites, Defendant LexisNexis requires users to identify themselves and the nature of their businesses. Moreover, Defendant LexisNexis specifically requires users to certify that they have a permissible purpose enumerated in 18 U.S.C. § 2721(b)(1)-(14) for any information obtained—even indirectly—from a motor vehicle record.

32. Defendants did not require any purchaser of a DMV-349 via the PoliceReports.us website to certify that such purchaser was purchasing the DMV-349 for a permissible purpose under 18 U.S.C. § 2721(b)(1)-(14).

33.     Defendants, upon information and belief, did not maintain records, as required by law, of the purpose for which buyers of DMV-349s purchased those reports.

## Facts related to the Accident

34.     On 13 September 2015, Hatch was driving his vehicle and was involved in a motor vehicle accident ("the Accident"). The Accident was a reportable crash as defined by N.C. Gen. Stat. § 20-4.01.

35.     The Charlotte-Mecklenburg Police Department ("CMPD") was notified of the Accident, and sent Officer P.J. Mulhall to investigate the Accident.

36.     At the scene of the Accident, and at the request of Office Mulhall, Hatch presented his driver's license to Officer Mulhall, as required by North Carolina law. Mulhall transcribed certain information, including Hatch's name, address, date of birth, and driver's license number from the driver's license into a computer program for the purposes of generating a standard DMV-349 form. The source of Hatch's name, address, date of birth, and driver's license number was the NCDMV.

37.     At the scene of the Accident, Officer Mulhall asked Hatch if the address on his driver's license was his correct address, and Hatch advised Officer Mulhall that the address was his correct current address. As a result of this interaction, Officer Mulhall checked a box (the "Same-as-D.L. Box") on

9

the computer such that a box on the DMV-349 would be checked to indicate that Hatch's address on the DMV-349 was the same as the address shown on Hatch's driver's license.

38.     Officer Mulhall filed the DMV-349 for the Accident with the CMPD, which, in turn, filed the DMV-349 with the NCDMV.

39.     CMPD transmitted the DMV-349 for the Accident to Defendants.

## Facts related to obtaining and disclosing personal information from motor vehicle records

40.     During September 2015 and at other times, Defendants sold DMV-349s in bulk to Davis & Gelshenen, LLP ("D&G"), a personal injury law firm, and to other personal injury law firms.

41.     Defendants knew that D&G and other personal injury law firms used the DMV-349s it purchased from Defendants for marketing purposes, i.e., to send letters to solicit as clients persons involved in motor vehicle accidents.

42.     Within a few days of the Accident, D&G and other personal injury law firms obtained a copy of the DMV-349 for the Accident from Defendants. Said report contained Hatch's name, address, and driver's license number, as well as the explicit written representation that the address on the DMV-349 matched the address on Hatch's driver's license.

10

Said report also contained the name and address of the other driver involved in the Accident.

43.    Hatch's name, address, and driver's license number on the DMV-349 for the Accident are "personal information from a motor vehicle record" under 18 U.S.C. § 2725.

44.    Defendants knew that the DMV-349 for the Accident contained Hatch's name, address, and driver's license number, as well as the explicit written representation that the address on the DMV-349 matched the address on Hatch's driver's license.

45.    Defendants knew that the DMV-349 for the Accident contained Hatch's personal information from a motor vehicle record because, *inter alia:*

>    a.    The investigating officer explicitly represented in writing, on the DMV-349, that Hatch's address shown on the DMV-349 matched the address on his driver's license. That fact could only have come from a review of the information such Hatch's driver's license or in a DMV database of driver's license information;

>    b.    The DMV-349 contained Hatch's driver's license number. Hatch's driver's license number originated with, and could only have come from, a department or division of motor vehicles;

11

c.  The DMV-349 had a field for recording restrictions on Hatch's driver's license. Defendants knew this field is routinely completed by officers directly from a driver's license. Driver's license restrictions could only originate as a record of a department of motor vehicles; and

d.  Defendants knew that officers routinely record the name and address of drivers from drivers' licenses or from the computerized records from the NCDMV.

46.  D&G and other personal injury law firms used Hatch's name and address, gleaned from the DMV-349 purchased from Defendants, to address and send Hatch a letter marketing D&G's legal services. A copy of said letter is attached hereto as **Exhibit 1** and incorporated herein as if fully set forth.

47.  Hatch actually received D&G's letter, as well as letters from other personal injury law firms who purchased the DMV-349 for the Accident from Defendants.

48.  The outside of the envelope containing D&G's letter to Hatch ("the Envelope") bore the legend, "THIS IS AN ADVERTISEMENT FOR LEGAL SERVICES", in bold print. The envelopes from the other personal injury law firms who sent letters to Hatch bore the same legend

49.  Any person who saw the exterior of the Envelope was informed that Hatch might need legal services, a fact that he did not desire published.

12

50.    As a proximate result of Defendants' sale and distribution of Hatch's protected personal information, Hatch's name, address and driver's license number were seen by D&G's employees, and potentially by employees of mailing operations. In addition, employees of the United States Postal Service were informed of Hatch's potential need for legal services. Further, Hatch had to pick up and deal with the letter D&G sent him.

51.    Hatch's privacy was invaded by, *inter alia*, Defendants' disclosing his personal information for marketing purposes and allowing others to use that information for marketing purposes; having his name, address and driver's license number disclosed for marketing purposes without his consent; and having his potential need for legal services disclosed to persons who had no business knowing about his legal affairs.

52.    Hatch did not consent to have his personal information from his motor vehicle records used for marketing purposes because North Carolina has no mechanism for a driver to provide such consent.

## CLASS ACTION ALLEGATIONS

53.    Plaintiff brings this action on behalf of a class defined as follows:

a.    All natural persons

b.    holding a North Carolina driver's license

c.    who are identified as a driver on a North Carolina DMV-349 completed by the CMPD;

13

d.    within the 4 years

    i.    preceding the filing of the Complaint in *Gaston, et al. v. LexisNexis Risk Services, et al.*, Case No. Case No. 5:16-cv-9 (W.D.N.C.) through conclusion of this action; or

    ii.    should the Court determine that the filing of the *Gaston* action did not toll the statute of limitations as to the Class herein proposed, preceding the filing of this Action

e.    which DMV-349 was distributed by Defendants by bulk sale; and

f.    whose

    i.    address is designated on the DMV-349 as matching the address on that person's driver's license or

    ii.    whose driver's license number is shown on a DMV-349;

g.    Excluding:

14

> > i.     Plaintiff's counsel and employees of their law firms;
> > and
> >
> > ii.     Officers or employees of the Court.

54.    **Numerosity** (Fed. R. Civ. P. 23(a)(1)): The Class members are so numerous that joinder of all is impractical. Upon information and belief, Defendants have knowingly obtained and disclosed the protected personal information of thousands or tens or hundreds of thousands of individuals meeting the above class definitions from DMV-349 reports for marketing purposes. Upon information and belief, those persons are identifiable through documents maintained by Defendants.

55.    **Existence and Predominance of Common Questions of Law and Fact** (Fed. R. Civ. P. 23(a)(2)): Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individual members. The common legal and factual questions include:

> a.     Whether Defendants knowingly obtained protected
> personal information from a motor vehicle record;
>
> b.     Whether Defendants' knowingly disclosed protected
> personal information from a motor vehicle record;
>
> c.     Whether Defendants' bulk sales were for marketing or
> other impermissible purposes;

15

d.    Whether Defendants' failure to maintain records of the purposes for which bulk purchasers bought DMV-349s containing personal information from motor vehicle records estops Defendants from denying:

    i.    the identifiability of the Class;

    ii.    the ascertainability of the Class

    iii.    that all bulk purchases were for an impermissible purpose under the DPPA; and

    iv.    the feasibility of the matter proceeding as a class action; and

e.    Whether Defendants violated section 2722(a) of the DPPA by obtaining and disclosing personal information from a motor vehicle record without a permissible purpose under § 2721(b) of the DPPA;

56.    **Typicality** (Fed. R. Civ. P. 23(a)(3)): Hatch's claims are typical of the claims of each Class member. Defendants acted in the same manner as to all Class members, and Hatch has the same claim for liquidated damages that he seeks for absent class members.

57.    **Adequacy** (Fed. R. Civ. P. 23(a)(4)): Hatch is an adequate representative of the Class. His interests are aligned with, and are not antagonistic to, the interests of the members of the Class he seeks to

16

represent, he has retained counsel competent and experienced in complex litigation, and he intends to prosecute this action vigorously. Hatch and his Counsel will fairly and adequately protect the interests of members of the Class.

58. **Final Injunctive and/or Declaratory Relief Appropriate** (Fed. R. Civ. P. 23(b)(2)): Defendants have acted on grounds that apply generally to the Class, i.e., they have obtained and sold DMV-349s containing the Class Members' personal information from their motor vehicle records for non-permitted purposes under the DPPA, such that final injunctive relief is appropriate respecting the Class as a whole.

59. **Predominance and Superiority** (Fed. R. Civ. P. 23(b)(3)): Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The liquidated damages sought by each member are the same. However, each class member's liquidated damages are limited, such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for the members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts to require class members to file thousands of individual lawsuits.

17

Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

<u>COUNT I</u>
<u>VIOLATION OF THE DRIVER'S PRIVACY PROTECTION ACT</u>
<u>(18 U.S.C. §§ 2721-25)</u>

60.    The allegations contained in the paragraphs 1 through 59, *supra*, are incorporated herein by reference.

61.    Defendants knowingly obtained and disclosed Hatch's protected personal information from a motor vehicle record as described above.

62.    Each Defendant knowingly obtained and disclosed Hatch's protected personal information from a motor vehicle record for use in marketing.

63.    When each Defendant knowingly obtained and disclosed Hatch's protected personal information, said Defendant lacked Hatch's express consent as required by the DPPA.

64.    By selling DMV-349s in bulk, either knowing that they would be used for marketing consciously indifferent to the purposes for which they

18

would be used, Defendants knowingly disclosed Hatch's personal information from a motor vehicle record in violation of the DPPA.

65. Defendants knowingly obtained and disclosed Hatch's personal information from a motor vehicle record for the purpose of marketing legal services.

66. Advertising for legal services for the solicitations of new potential clients is not a permissible purpose for obtaining motor vehicle records under the DPPA. *Maracich v. Spears*, 133 S. Ct. 2191 (2013).

67. Defendants knowingly obtained and disclosed Hatch's personal information from a motor vehicle record in violation of the DPPA.

68. Because

    a. Defendants continue to regularly and knowingly obtain and disclose personal information from motor vehicle records for purposes of marketing and without requiring purchasers to disclose the purpose of their purchases, and

    b. Hatch and the Class Members could be involved in other motor vehicle accidents for which Defendants acquire the DMV-349s

violations of the DPPA are likely to continue.

69. Under 18 U.S.C. § 2724(b)(4), the Court should enter a permanent injunction prohibiting Defendants from obtaining or disclosing

19

personal information from motor vehicle records for marketing purposes. Specifically, the Court should enjoin Defendants from:

      a.    Obtaining names and addresses sourced from DMV-349s for purposes of marketing legal services;

      b.    Disclosing or selling DMV-349s without requiring the purchaser to certify the purpose for which the report is being acquired and without notifying purchasers of the requirements of the DPPA; and

      c.    Disclosing or selling DMV-349s for marketing purposes or to persons or entities Defendants know are acquiring the DMV-349s for marketing or other impermissible purposes.

74.    Plaintiffs and members of the class are entitled to a declaration under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et al.*, and/or the North Carolina Uniform Declaratory Judgment Act, N.C. Gen. Stat. §§ 1-253 through 1-267, that the Defendants' obtaining, using, and/or disclosing personal information from motor vehicle records for marketing purposes, as described herein, violates the DPPA and is unlawful.

70.    Hatch sustained actual damages as described above as a proximate result of Defendants' unlawful conduct.

71.    Because Defendants obtained and disclosed Hatch's personal information from a motor vehicle record for a purpose not permitted under

the DPPA, Hatch is entitled to liquidated damages of $2,500.00 in lieu of actual damages for each bulk sale of the DMV-349 for the Accident.

72.    Because Defendants acted in the same manner as to all Members of the Class, each Class Member is entitled to $2,500.00 in lieu of action damages for each bulk sale of the DMV-349 for each Class Member's accident.

### PRAYER FOR RELIEF

WHEREFORE, Hatch prays the Court for the following relief:

73.    To enter an Order certifying the proposed Class under Rule 23(b)(2), or, in the alternative, Rule 23(b)(3), and appointing Hatch and the undersigned counsel of record to represent the Class;

74.    To permanently enjoin each Defendant, pursuant to 18 U.S.C. § 2724(b)(4), from:

      a.    Obtaining names and addresses sourced from DMV-349s for purposes of marketing legal services;

      b.    Disclosing or selling DMV-349s without requiring the purchaser to certify the purpose for which the report is being acquired and without notifying purchasers of the requirements of the DPPA; and

        c.      Disclosing or selling DMV-349s for marketing purposes or to persons or entities Defendants know are acquiring the DMV-349s for marketing or other impermissible purposes.

3.      For a declaratory judgment that the Defendants' obtaining, using, and/or disclosing personal information from motor vehicle records for marketing purposes as described herein violates the DPPA and is unlawful.

4.      To award liquidated damages, pursuant to 18 U.S.C. §2724(b)(1), to each Class Member in the amount of $2,500.00 for each instance in which a Defendant knowingly obtained or disclosed that Class Member's protected personal information, an amount in excess of $25,000.00;

5.      To award reasonable attorneys' fees and other litigation costs reasonably incurred, pursuant to 18 U.S.C. § 2724(b)(3);

6.      To award pre- and post-judgment interest as allowed by law;

7.      For a trial by jury on all issues so triable; and

8.      For such other and further relief as the Court deems just and proper.

**A jury trial is demanded for all issues so triable.**

Respectfully submitted, this the 12th day of September, 2019.

WHITE & STRADLEY, PLLC                      */s/ J. David Stradley*
3105 Charles B. Root Wynd                   (NC Bar # 22340)
Raleigh, North Carolina 27612
Telephone: (919) 844-0400
stradley@whiteandstradley.com


HIGGINS BENJAMIN, PLLC                       */s/Frederick L. Berry*
301 North Elm Street, Ste. 800              (NC Bar # 9696)
Greensboro, NC  27401
Telephone: 336-273-1600                      */s/ John F. Bloss*
Facsimile:  336-274-4650                    (NC Bar #23947)
fberry@greensborolaw.com
jbloss@greensborolaw.com


BROWN, FAUCHER, PERALDO &                    /s/ Andrew H. Brown
       BENSON, PLLC                         (NC Bar # 28450)
822 N. Elm Street Suite 200
Greensboro, North Carolina 27401             /s/ James R. Faucher
Telephone (336) 478-6000                    (NC Bar # 31514)
drew@greensborolawcenter.com
james@greensborolawcenter.com


                                             *Attorneys for Plaintiff*